1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California nonprofit public benefit corporation,<br><br>   Plaintiff,<br><br> vs.<br><br>THORNTON STEEL & IRON WORKS, INC., a California corporation,<br><br>   Defendant. | Civil Case No. 8:24-cv-02027<br><br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 _et seq._)** |

# CONSENT DECREE

The following consent decree ("Consent Decree") is entered into by and between Orange County Coastkeeper ("Coastkeeper") and Thornton Steel & Iron Works, Inc. ("Thornton Steel" or "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively are the "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a nonprofit public benefit corporation;

**WHEREAS**, Coastkeeper is dedicated to the protection of swimmable, drinkable, fishable water, and the promotion of watershed resilience throughout Orange County, including the Anaheim Bay/Huntington Harbour watershed;

**WHEREAS,** Thornton Steel is the current operator of the facility located at 1323 S State College Pkwy, Anaheim, CA 92806 (the "Facility");

**WHEREAS**, Coastkeeper alleges that Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ, as subsequently amended by Order No. 2018-0028-DWQ (effective July 1, 2020) (collectively, as amended, and as may be subsequently amended from time to time, the "General Permit" or the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or the "CWA");

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best

conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs or other control measures as necessary to comply with any and all applicable receiving water limitations, including the Santa Ana Basin Plan, and/or other requirements set forth in the Permit, including compliance with the Criteria for Priority Toxic Pollutants in the State of California ("CTR"), 40 C.F.R. § 131.38, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on July 16, 2024, Coastkeeper issued a notice letter (the "Notice Letter") to Thornton Steel, their registered agents, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resource Control Board (the "State Water Board"), the Executive Officer of the Santa Ana Regional Water Quality Control Board (the "Regional Water Board"), the Regional Administrator of EPA Regional IX, and the U.S. Attorney General alleging violations of the General Permit and Clean Water Act at the Facility;

**WHEREAS**, on September 19, 2024, Coastkeeper filed a Complaint against Defendant (the "Complaint") in the United States District Court for the Central District of California (Civil Case No. 8:24-cv-02027) (hereinafter, the "Action");

**WHEREAS**, Coastkeeper alleges that Defendants are violating the substantive and procedural requirements of the General Permit and Clean Water Act;

**WHEREAS**, Defendant denies each of Coastkeeper's claims in the Notice Letter and the Complaint;

**WHEREAS**, the Settling Parties agree it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, Defendant agrees to comply with the current version of the General Permit;

**WHEREAS**, capitalized terms used but not defined herein shall have the meanings ascribed to them in the General Permit; and

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.  The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.  Venue is appropriate in the U.S. District Court for the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.  The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1).

4.  Coastkeeper has standing to bring the Clean Water Act claims raised in the Notice Letter and Complaint.

5.  The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the Term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. OBJECTIVES

6.  It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 et seq., and to resolve those issues alleged by Plaintiff in its Complaint. Considering these

objectives and as set forth fully below, Defendant agrees to comply with all applicable provisions of this Consent Decree, the IGP, and all applicable provisions of the Clean Water Act. Specifically, Defendant agrees to comply with Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations set forth in the IGP in the industrial and production areas.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

7.    Coastkeeper shall submit this Consent Decree to the United States Department of Justice and EPA (collectively, the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five (45) days after receipt of this Consent Decree by the Federal Agencies, as evidenced by certified mail return receipts or other tracking information, copies of which shall be provided to Thornton Steel upon request. If the Federal Agencies comment negatively on or object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time, not to exceed thirty (30) days.

8.    Following expiration of the Federal Agencies' 45-day review period, Coastkeeper shall submit the Consent Decree to the Court for entry.

## III.    DEFINITIONS

9.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

    a.    "BMPs" means Best Management Practices.

    b.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

c.  "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

d.  "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

e.  "MIP" means Monitoring Implementation Plan.

f.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in the General Permit.

g.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

h.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

i.  "SWPPP" means a Storm Water Pollution Prevention Plan.

j.  "Term" means the period between the Effective Date and the "Termination Date."

k.  "Effective Date" means the date of entry of this Consent Decree by the Court. If, by the end of the forty-five (45) day review period referenced in paragraph 6, *supra*, the Federal Agencies offer no objection, the Settling Parties agree to request immediate entry of this Consent Decree by the Court and if, after fourteen days, the Court has not entered the Consent Decree, the Settling Parties agree that any party to this agreement may request a hearing before the Court to seek entry of the Consent Decree.

10. "Termination Date" shall be defined as:

a.   Three (3) years after the completion of installation of the BMPs defined in Paragraph 12 below, unless there is an ongoing, unresolved formal dispute regarding Defendant's compliance with this Consent Decree.

b.   If there is an ongoing, unresolved formal dispute regarding Defendant's compliance with this Consent Decree, the Consent Decree will terminate within fifteen (15) days' notice by Coastkeeper that the dispute has been fully resolved (the occurrence of any of the above hereinafter being the "Termination Date," as applicable).

c.   If the Dispute Resolution procedure in Section VI is initiated prior to the later of dates in Paragraph 10.a and 10.b. above, seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute Resolution procedure that the dispute has been fully resolved, or (2) an order of the Court resolving the dispute.

d.   Notwithstanding sections 10.a, 10.b, and 10.c, if the Regional Board approves a Notice of Termination submitted for the Facility pursuant to Section 2.C of the General Permit, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for the Facility, or (2) seven (7) calendar days from Thornton Steel's completion of all payments required by this Settlement Agreement.

## IV.   **COMMITMENTS OF THE SETTLING PARTIES**

### A. **Storm Water Pollution Control Best Management Practices**

11.   In addition to maintaining the current BMPs at the Facility, Thornton Steel shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the General Permit. Specifically, Defendants shall develop and implement BMPs to prevent and/or to reduce

contamination in industrial storm water discharged from the Facility consistent with BAT and BCT and/or when necessary to support attainment of water quality standards ("WQS").

12.    Within thirty (30) days of the Effective Date of this Consent Decree, Thornton Steel shall develop and fully implement the following BMPs at the Facility:

12.1.   Implement pre-rain protocol to include pre-rain sweeping and tarping of raw materials and covering of waste bins.

12.2.   Install Filtrexx Industrial Blend filter socks around the perimeter of outdoor storage areas.

12.3.   Replace forklift brake pads with copper-free alternatives.

12.4.    Maintain existing storm-resistant shelters for storage of outdoor materials.

12.5.   Continue to reduce storage of outdoor products to the maximum extent practicable.

12.6.   Obtain a small walk-behind vacuum industrial sweeper and sweep all accessible areas of the plant each workday.

12.7.   Manually sweep all areas inaccessible by the mechanical sweeper at least weekly and on the last workday before rain is forecasted.

13.    <u>Confirmation of Completion</u>. Thornton Steel shall provide Coastkeeper with written documentation, including photographs, demonstrating that the required BMPs have been implemented in compliance with Paragraph 12 above within thirty (30) days of completion in each case.

**B. <u>Storm Water Sampling</u>**

14.    <u>Sampling</u>. The following storm water monitoring procedures shall be implemented at the Facility:

14.1.   <u>Frequency</u>. During the Term of this Consent Decree and thereafter in compliance with the General Permit, Defendants shall collect samples

from at least four (4) Qualifying Storm Events ("QSEs"), as defined in the General Permit per Reporting Year from the analytical monitoring locations described in the Facility SWPPP provided that at least four (4) QSEs occur during the applicable Reporting Year during business hours as defined in the Facility's SWPPP. Thornton Steel shall sample at least two (2) QSEs during each half of the Reporting Year. For the 2025-2026 Reporting Year, if there are not at least two (2) QSEs during the first half of the Reporting Year, the Facility shall make every effort to collect samples from four (4) QSEs during the second half of the Reporting Year.

14.2. <u>Documentation</u>. To document the storm water discharge and discharge location, an employee shall take photographs of the storm water discharge and discharge location when samples are collected (the "Sampling Photographs"). Thornton Steel shall maintain a recording rain gauge capable of recording rainfall to 0.1 inches. Thornton Steel shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Coastkeeper with Thornton Steel's Monitoring Report, as described below.

14.3. <u>Parameters</u>. All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1 herein.

14.4. <u>Lab</u>. Except for pH samples, a laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree. Unless otherwise required by the General Permit, analysis of pH shall be completed onsite using a calibrated instrument for pH in accordance with the manufacturer's instructions.

14.5. <u>Detection Limits</u>. Thornton Steel shall require that the laboratory use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1 or the General Permit, whichever is lower.

14.6. <u>Holding Time</u>. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 C.F.R. Part 136.

14.7. <u>Results</u>. Thornton Steel shall request that sample-analysis results and associated chain of custody forms be reported to them within the standard return time.

14.8. <u>Reporting</u>. No later than thirty (30) days from receipt of the complete laboratory report, Thornton Steel shall (i) submit sampling results to the State Board's Stormwater Multiple Application and Report Tracking System website ("SMARTS") and (ii) notify Coastkeeper of the upload to SMARTS. Thornton Steel shall also submit the Sampling Photographs to Coastkeeper within 30 days of receipt of laboratory results.

**C. <u>Action Plans and Stipulated Penalties</u>**

15.    <u>Action Plan Trigger</u>. Thornton Steel shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the values set forth in Table 1 below (the "Table 1 Values"). Failure to achieve Table 1 Values shall not be deemed a violation of the Permit or this Consent Decree so long as Thornton Steel continues to make timely and diligent efforts as required by the Permit and herein to further reduce the level of pollutants in the discharges. During the Term of this Consent Decree, and only using stormwater sampling results for samples collected following implementation of the BMPs outlined in Paragraph 12, any three (3) exceedances of the Table 1 Numeric Values

Consent Decree                         10                    Civil Case No. 8:24-cv-02027

below in the same reporting year for the same pollutant, or an annual average exceedance of a Table 1 Numeric Value in a reporting year, shall trigger the Action Plan Requirements set forth in Paragraph 16 below.

**Table 1. Numeric Values for Storm Water Discharges**

| Parameter | Limit | Source of Limit |
|---|---|---|
| pH | <6.5 or >8.5 | Basin Plan |
| Total Suspended Solids | 100 mg/L | Annual NAL (Table 2 of IGP) |
| Oil and Grease | 15 mg/L | Annual NAL (Table 2 of IGP) |
| N+N | 0.68 mg/L | Annual NAL (Table 2 of IGP) |
| Total Recoverable Aluminum | 0.75 mg/L | Annual NAL (Table 2 of IGP) |
| Total Recoverable Iron | 1.0 mg/L | Annual NAL (Table 2 of IGP) |
| Total Recoverable Zinc | 0.26 mg/L | Annual NAL (Table 2 of IGP) |

16.    In the event the requirement to prepare an Action Plan is triggered at the Facility pursuant to Paragraph 15 above, Thornton Steel shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the discharge of the parameter in question during the next reporting year at the Facility (an "Action Plan"). In any year that an Action Plan is required, such Action Plan shall be submitted by July 15 immediately following the reporting year the Action Plan was triggered.

16.1.  Each Action Plan submitted shall include, at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s); (2) an assessment of the potential source of each contaminant exceedance; (3) the identification of additional BMPs to reduce each such contaminant, which must include advanced treatment and other appropriate measures, that shall be implemented to achieve compliance with the Table 1 Value(s), or the results of a pollutant source demonstration allowed by the Level 2 Exceedance Response Action requirements of IGP section XII.D.2; and (4) time schedule(s) for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 immediately following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Parties. If Thornton Steel seeks to propose a time schedule beyond October 1, it shall seek Coastkeeper's approval of the time schedule no later than July 1 of the following year.

16.2.  Coastkeeper shall have thirty (30) days upon receipt of Thornton Steel's Action Plan to provide Thornton Steel with comments. Within thirty (30) days of receiving Coastkeeper's comments on the Action Plan, Thornton Steel shall accept and incorporate Coastkeeper's comments into the Action Plan, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan and/or Thornton Steel's failure to incorporate Coastkeeper's comments shall be resolved

pursuant to the dispute resolution provisions of this Consent Decree, set out in Section 6 below.

16.3.  When an Action Plan is completed, Thornton Steel shall revise the Facility SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Thornton Steel shall notify Coastkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Coastkeeper for review and comment as set out in Paragraphs 21 below.

16.4.  If Thornton Steel is required to submit an Action Plan to Coastkeeper in accordance with Paragraph 15 & 16 above, Thornton Steel shall make a payment of Five Thousand Dollars ($5,000) per Action Plan concurrently with each Action Plan submittal. Such payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

**D.    Visual Observations**

17.    Storm Water Discharge Observations. During the Term of this Consent Decree, Thornton Steel shall conduct visual observations during each QSE that is sampled.

18.    Non-Storm Water Discharge Observations. During the Term of this Consent Decree, Thornton Steel shall conduct monthly non-storm water visual observations pursuant to the Storm Water Permit as part of the Facility's monthly dry weather inspections.

19.    Visual Observation Records. Thornton Steel shall maintain observation records to document compliance with Paragraphs 17 and 18 above and shall provide Coastkeeper with copies of such records within fourteen (14) days of receipt of

Coastkeeper's written request.

E.   **Employee Training**

20.    Within thirty (30) days of the Effective Date, Thornton Steel shall develop and implement an employee training program that meets the following requirements and ensures: (1) there are a sufficient number of employees at the Facility designated to achieve compliance with the Storm Water Permit and this Consent Decree (hereinafter referenced as "Designated Employees" or "DE"); (2) such Designated Employees are properly trained to perform the required activities to maintain compliance with the Storm Water Permit, the Facility's SWPPP, and this Consent Decree; and (3) all full-time regular (non-temporary) non-clerical Thornton Steel employees at the Facility (hereinafter referenced as "ALL Employees") receive basic information regarding storm water housekeeping and best practices (the "Training Program"). At a minimum, the Training Program shall include the following:

20.1.   Non-Storm Water Discharges. Designated Employees shall be trained on the Storm Water Permit's prohibition of non-storm water discharges so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges.

20.2.   The SWPPP and BMPs. Thornton Steel shall train all Designated Employees on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water and prevent the discharge of contaminated storm water from the Facility. Designated Employees shall be trained on proper operational procedures and control measures. All training of Designated Employees must include the requirements of the Storm Water Permit

Consent Decree                    14                    Civil Case No. 8:24-cv-02027

and this Consent Decree including the additional BMPs outlined in Paragraph 12 above.

20.3. <u>Storm Water Sampling</u>. Thornton Steel shall designate an adequate number of Designated Employees necessary to collect storm water samples as required by this Consent Decree and the Storm Water Permit. The Training Program shall include training of Designated Employees sufficient to ensure: (i) proper sampling protocols, including chain of custody requirements, are followed at all times and, (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory.

20.4. <u>Training Implementation</u>. Training of at least two (2) Designated Employees (hereinafter referenced as "Designated Trainers" or "DT") shall be provided by a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) familiar with the requirements of this Consent Decree and the Storm Water Permit. The Designated Trainers and/or the QISP shall provide the training set forth in this Paragraph 20.

20.5. <u>Language</u>. The Training Program shall be conducted, and all training materials shall be made available, in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to: (i) staff comprehension of the Training Program and/or, (ii) compliance with this Consent Decree and the Storm Water Permit, Thornton Steel shall provide translation services at all training sessions and of all training materials.

20.6. <u>Training Program Frequency – DE Employees</u>. The Training Program shall be repeated annually or more frequently as necessary to ensure

Consent Decree                    15                    Civil Case No. 8:24-cv-02027

all Designated Employees are familiar with the requirements of this
Consent Decree and the Storm Water Permit. Designated Employees
should, in any event, receive training prior to assuming
responsibilities under the Storm Water Permit or this Consent Decree.

20.7. <u>Training Program Frequency – ALL Employees</u>.  ALL Employees
who have not received training shall receive initial training  to ensure
they receive enough information regarding storm water housekeeping
and best practices to comply with this Consent Decree and the Storm
Water Permit. ALL Employees who are new shall receive this training
within one year of hiring or sooner if necessary.

20.8. <u>Training Records</u>. Thornton Steel shall maintain training records to
document compliance with this section and shall provide Coastkeeper
with a copy of such records within fourteen (14) days of receipt of
Coastkeeper's written request.

**F.    Storm Water Pollution Prevention Plan**

21.    <u>SWPPP</u>. Within thirty (30) days of the Effective Date, Thornton Steel shall
amend the Facility's SWPPP to incorporate the requirements of the Storm Water Permit
and this Consent Decree, which include but are not limited to the following:

21.1. Update the individual(s) responsible for compliance with the Storm
Water Permit and this Consent Decree, including the name of the
person heading the program and positions responsible for specific
areas of compliance (*e.g.*, collecting storm water samples) and the
procedures to identify alternate team members to implement the
SWPPP and to conduct required monitoring when the regularly
assigned team members are temporarily unavailable;

21.2. Revise the Facility Site Map to identify all drain inlets and include
information on infiltration basin sizing;

21.3.  Update Facility BMPs as set forth in this Consent Decree within the time periods indicated above in Paragraph 21;

22.    <u>Revising the SWPPP</u>. Thornton Steel shall revise the Facility's SWPPP if there are any significant changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or significant changes/additions to the BMPs at the Facility, within thirty (30) days of the occurrence of any of the above-listed events.

23.    <u>Commenting on Revised SWPPPs</u>. Thornton Steel shall submit each revised SWPPP to Coastkeeper for review and comment within thirty (30) days of its completion. Coastkeeper shall provide comments, if any, to Thornton Steel within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Coastkeeper's comments on the SWPPP, Thornton Steel shall accept and incorporate Coastkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Thornton Steel's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**G.    <u>Compliance Monitoring and Reporting</u>**

24.    <u>Site Inspections</u>. Coastkeeper and its representatives may conduct one (1) wet weather site inspection and one (1) dry weather site inspection per year at the Facility during the Term of this Consent Decree. In addition, Coastkeeper and its representatives may conduct one (1) inspection upon the completion of the BMPs described in Paragraph 12. In the event of a dispute between the Settling Parties regarding Thornton Steel's compliance with this Consent Decree, and provided a site inspection would be relevant to resolving such dispute, Coastkeeper shall be entitled to an additional site inspection. Coastkeeper shall not unreasonably request, and Thornton Steel shall not unreasonably deny, the additional site inspection.

24.1.  The site inspections shall occur Monday through Friday, excluding Federal holidays, during normal business hours. Coastkeeper shall

provide Thornton Steel with no less than forty-eight (48) hours' notice before any site inspection. Notice will be provided via electronic mail to the notice recipient(s) designated in Paragraph 41 below. For any site inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing during normal business hours or reschedule the inspection for an alternative date during normal business hours if the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. As used throughout this Paragraph 24.1, "normal business hours" shall mean and refer to the Facility operating hours as identified in the Facility's SWPPP. The Parties agree to meet in good faith to accommodate the needs and schedules of both Parties and their representatives to facilitate any dry weather inspection.

24.2.   During the site inspections, Coastkeeper shall be allowed access to the Facility's SWPPP, storm water visual observation records, storm water employee training records, and other storm water monitoring records, reports, Sampling Photographs (as defined above), and storm water sampling data for the Facility.

24.3.   During the site inspections, Coastkeeper may inspect and collect samples of storm water discharges from the Facility and take photos and/or videos related to Storm Water Permit and/or Consent Decree compliance. A certified California laboratory shall analyze samples collected by Coastkeeper and copies of the lab reports and photographs shall be provided to Thornton Steel upon request.

25.   Reporting and Document Provision. During the Term of this Consent Decree, Thornton Steel shall provide Coastkeeper with a copy of all documents, monitoring and/or sampling data, written communications, and/or correspondence related

to Permit compliance at the Facility that are submitted to the Regional Water Board, State Water Board, and/or any Federal, State, or local agency, county, or municipality. Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any documents, written communications, and/or correspondence related to Thornton Steel's compliance with the Storm Water Permit received by Thornton Steel from any Federal, State, or local agency, county or municipality shall be provided to Coastkeeper within fourteen (14) days of receipt by Thornton Steel.

## V. ENVIRONMENTAL MITIGATION PROJECT, LITIGATION FEES AND COSTS, AND STIPULATED PENALTIES AND INTEREST

26.    <u>Compliance Monitoring and Oversight</u>. Thornton Steel agrees to partially defray costs associated with Coastkeeper's monitoring of Thornton Steel's compliance with this Consent Decree in the amount of Thirty Thousand Dollars ($30,000) for an anticipated term of three (3) years from the Effective Date. Such payment shall be made within thirty (30) days of the Effective Date. Payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

27.    <u>Environmentally Beneficial Project</u>. To remediate the environmental harms alleged to have resulted from the allegations in the Notice Letter and Complaint, Thornton Steel agrees to make either: (a) a payment of Twenty-Five Thousand Dollars ($25,000) to Huntington Beach Wetlands Conservancy, 21900 Pacific Coast Hwy., Huntington Beach, CA 92646 within thirty (30) days of the Effective Date; or (b) a payment of Thirty-Five Thousand Dollars ($35,000) within one (1) year of the Effective Date. Thornton Steel shall provide Coastkeeper with a copy of such payment and copy Coastkeeper and its attorneys on any related correspondence.

28.    <u>Coastkeeper's Fees and Costs</u>. To partially reimburse Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees,

and other costs incurred as a result of investigating and filing the lawsuit and negotiating resolution of this matter, Thornton Steel shall pay a total of Seventy Thousand Dollars ($70,000) within thirty (30) days of the Effective Date, delivered via certified mail or overnight delivery to: Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

29.    <u>Stipulated Payment</u>. For any missed deadline, Coastkeeper shall promptly notify Thornton Steel in writing of the missed deadline and provide Thornton Steel no fewer than five (5) business days to cure. Thornton Steel shall make a stipulated remediation payment of Five Hundred Dollars ($500) per day for any and each missed deadline specified in this Consent Decree not previously extended in writing by the Settling Parties or cured upon notice by Coastkeeper. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Thornton Steel's discharges and shall be made to Huntington Beach Wetlands Conservancy identified above and delivered via check or wire transfer. Thornton Steel agrees to make the stipulated payment within thirty (30) days of the missed deadline. Thornton Steel shall provide Coastkeeper with a copy of each such payment at the time it is made.

## VI.    <u>DISPUTE RESOLUTION</u>

30.    <u>Court Enforcement Authority</u>. This Court shall retain jurisdiction over this matter for the Term of this Consent Decree for the purposes of enforcing the terms and conditions and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

31.    <u>Meet and Confer</u>. The Settling Parties shall at all times work informally in good faith to address any issues that might arise concerning Thornton Steel's compliance with the Storm Water Permit and the Clean Water Act occurring or arising after the Effective Date of the Consent Decree, however; a Settling Party shall be able to invoke

the dispute resolution procedures of this Section VI by notifying all other Settling Parties in writing of the matter(s) in dispute and the disputing party's proposal for resolution. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen (14) calendar days from the date of the notice in an attempt to fully resolve the dispute within thirty (30) days. The Settling Parties may, but are not required to, elect to extend these time periods in an effort to resolve the dispute without court intervention.

32.     <u>Formal Resolution</u>. If the Settling Parties cannot resolve a dispute through the meet and confer process discussed above, the Settling Party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

33.     <u>Fees and Costs</u>. If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365(d) and 1319(d), applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**VII.     <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>**

34.     <u>Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases Thornton Steel and each of their current and former officers, directors, managers, members, employees, parents, subsidiaries, divisions, affiliates, insurers, landlords, lenders, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other

representatives of and from, from and waives all claims which were or could have been asserted in Coastkeeper's Notice Letter and Complaint up to and including the Termination Date of this Consent Decree.

35. <u>Thornton Steel's Release</u>. Upon the Effective Date of this Consent Decree, Thornton Steel, on their own behalf and on behalf of their current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives, hereby release Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) of and from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, Coastkeeper's Complaint up to and including the Termination Date of this Consent Decree, except for fees, costs, expenses or any other sum incurred or claimed pursuant to Paragraph 33 of this Consent Decree.

## VIII. **MISCELLANEOUS PROVISIONS**

36. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation on disputed claims. Neither this Consent Decree, the implementation of additional BMPs, nor any payment made pursuant to this Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor as an admission of violation of any law, rule, or regulation. Thornton Steel maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

37. <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the performance of any of its respective obligations under this Consent Decree when performance becomes impossible due to an event of Force Majeure. Force Majeure is any

event arising from: war; fire; earthquake; windstorm; flood or natural catastrophe; civil disturbance; vandalism; pandemic or public health threat; sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. A Force Majeure shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Settling Party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and that despite exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

38.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

39.    Choice of Law. The laws of the United States shall govern this Consent Decree.

40.    Severability. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

41.    Correspondence. All documents and/or notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or courier, as follows:

If to Coastkeeper:

Orange County Coastkeeper

Attn: Legal Department

Email: sarah@coastkeeper.org

3151 Airway Avenue, Suite F-110

Costa Mesa, California 92626


If to Thornton Steel:

Steven Braseny

President

Thornton Steel & Iron Works, Inc.

1323 S. State College Parkway

Anaheim, CA 92806

Email: steveb@tsiwinc.com


With a copy to:

Alan N. Bick

Bick Law LLP

520 Newport Center Drive, Suite 750

Newport Beach, CA 92660

Email: abick@bicklawllp.com

Any change of address or addresses shall be communicated in the manner described above for giving notices. Notifications of communications shall be deemed submitted immediately after receipt via email or the next business day after having been deposited with U.S. mail or courier service.

42.    Effect of Consent Decree. Nothing in this Consent Decree shall be construed

to affect or limit in any way Thornton Steel's obligation to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree. Compliance with this Consent Decree shall not be deemed to constitute compliance with the Storm Water Permit, the Clean Water Act, or any other law, rule, or regulation.

43. <u>Thornton Steel's Assignment or Sale of Property</u>. Subject only to the express conditions contained in this Consent Decree, all the rights, duties, and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a Thornton Steel transferee or assign ("Thornton Steel Assignee") will continue industrial operations at the Facility, Thornton Steel shall notify Coastkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, Thornton Steel will provide Coastkeeper with a written assignment and assumption duly executed by Thornton Steel and the Thornton Steel Assignee assigning Thornton Steel's obligations under this Consent Decree to the Thornton Steel Assignee. In the event Thornton Steel transfers, sells, or otherwise disposes of the Facility and underlying real property, Thornton Steel shall notify Coastkeeper ten (10) days in advance of the proposed transfer, sale, or disposition (the "Property Transfer Notice") and within ten (10) days following the Property Transfer Notice, Thornton Steel will provide Coastkeeper with a written assignment duly executed and acknowledged by Thornton Steel and the Facility transferee ("Facility Transferee") assigning Thornton Steel's obligations under this Consent Decree to the Property Transferee.

44. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, extended, or terminated

unless by a written instrument, signed by the Settling Parties.

46.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and/or ambiguity shall not be interpreted against any one party.

48.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    <u>Authority</u>. The undersigned representatives for each Settling Party each certify s/he is fully authorized by the Settling Party whom s/he represents to enter into the terms and conditions of this Consent Decree. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

50.    <u>Validity</u>. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

[Remainder of this page intentionally left blank]

1    **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as

2    of the date first set forth below.

3

4    APPROVED AS TO CONTENT

5

6

7    Dated: April 1 _____, 2025          By: _____
                                            Garry Brown
8                                           Founder & President
9                                           Orange County Coastkeeper

10

11   Dated: April 16 _____, 2025         By: _____
                                            Steven Braseny
12                                          President
13                                          Thornton Steel & Iron Works, Inc.

14   APPROVED AS TO FORM

15

16                                          ORANGE COUNTY COASTKEEPER

17   Dated: April 1 _____, 2025          By: _____
                                            Sarah Spinuzzi
18                                          Legal Director
19                                          Orange County Coastkeeper

20

21                                          By: _____
     Dated: April 10 _____, 2025
22                                          Alan N. Bick
23                                          Bick Law LLP
                                            Attorney for Thornton Steel & Iron Works,
24                                          Inc.

25

26

27

28   [Proposed] Consent Decree          27          Civil Case No. 8:24-cv-02027

1    **IT IS SO ORDERED.**

2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

3    Dated: June 16, 2025

By: _____

4

HONORABLE WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28